UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WESLEY CARUTHERS, JR.,

    Plaintiff,

-vs-                                                    Case No.  8:07-CV-134-T-30TBM

DEPUTY SHAWNEE McCAWLEY,

    Defendant.
_____/

## O R D E R

Plaintiff, an inmate of the Florida penal system proceeding *pro se* and *in forma pauperis*, initiated this action by filing a civil rights complaint pursuant to 42 U.S.C. § 1983 on January 22, 2007 (Dkt. 1). On August 19, 2007, Plaintiff filed an amended complaint (Dkt. 19). In his amended complaint, Plaintiff asserts excessive use of force and due process claims arising out of an incident which occurred on January 24, 2005, prior to his arrest. On October 5, 2007, Defendant filed a Motion to Dismiss Amended Civil Rights Complaint and/or Strike Claim for Punitive Damages and Incorporated Memorandum of Law ("motion") which is currently before the Court for consideration (Dkt. 21). Plaintiff filed his opposition to the motion on November 23, 2007 (Dkt. 26).

**Plaintiff's Amended Complaint**

Plaintiff alleges the following: on January 24, 2005, at approximately 8:00 p.m., Plaintiff and a woman named Sandy Gibbons ("Gibbons") were in a hotel room when deputies from the Polk County Sheriff's Department arrived to question Plaintiff about a

bank robbery that took place earlier that day. Two deputies knocked on the hotel room door, and Gibbons opened the door then slammed it shut again.

Subsequently, another officer called the telephone in Plaintiff's hotel room, and Gibbons answered the telephone and spoke to the officer. The officer asked to speak with Plaintiff, but Plaintiff refused. The officer asked Gibbons if there were any weapons in the hotel room, and Gibbons told the officer that there were no weapons. The officer then told Gibbons that a S.W.A.T. team had surrounded the hotel, and she wanted Plaintiff to come out of the hotel room and speak with the deputies.

Two hours later Plaintiff told deputies, "through the door," the he was ready to surrender and come out of the room. Before Plaintiff exited the room, he looked out the window to see where the deputies were located, and he noticed that a number of the lights directly in front of his room had been knocked out.

Plaintiff opened the door, stepped out of the room, attempted to raise his hands[1], looked to the left, then he looked to the right where he heard officers giving him commands and he saw three to five officers about ten feet away from him who were kneeling down on the ground behind a bullet-proof shield. Then, Defendant McCawley, who was the officer holding the shield, shot Plaintiff in the chest with a pistol.[2] At that point Plaintiff was in fear for his life, and he turned to the left and started running away from the officers. Defendant McCawley fired three more shots at Plaintiff, and another officer shot a shot-gun four times

---

[1] Plaintiff asserts he was unarmed (Dkt. 19 at 5).

[2] In his amended complaint, Plaintiff asserts that "Defendent [sic] states, 'he thought he seen [sic] dark object in Plaintiffs [sic] right hand.'" (Dkt. 19 at 8).

at Plaintiff. One of Defendant McCawley's bullets struck Plaintiff in his back. As a result of being shot, Plaintiff sustained permanent injuries and is confined to a wheelchair.

Plaintiff contends that Defendant McCawley violated his Eighth Amendment right to be free of cruel and usual treatment, and his Fourteenth Amendment right to due process.[3] Plaintiff seeks both compensatory and punitive damages.

## Standard of Review

In determining whether to grant a Fed. R. Civ. P. l2(b)(6) motion, the Court construes the complaint in the light most favorable to the plaintiff and its allegations are taken as true. *See Roberts v. Florida Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir. 1998), *cert. denied*, 525 U.S. 1139 (1999). A motion to dismiss will be denied unless it appears beyond all doubt that Plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Id.* In the case of a *pro se* action, moreover, the Court should construe the complaint more liberally than it would formal pleadings drafted by lawyers. *See Tannenbaum v. United States,* 148 F.3d 1262 (11th Cir. 1998).

---

[3]The Eighth Amendment prohibits the use of excessive force against those convicted of a crime. *See Graham v. Connor*, 490 U.S. 386, 395 n.10, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). The Fourteenth Amendment protects pretrial detainees, those charged with, but not yet convicted of, a crime from the use of excessive force. *See Bell v. Wolfish*, 441 U.S. 520, 523, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). Plaintiff's claim of excessive force during his arrest is properly brought under the Fourth Amendment. *See Graham v. Connor*, 490 U.S. at 394 ("Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person."). The Court must "liberally construe complaints filed by pro se plaintiffs." *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998). Therefore, the Court will construe Plaintiff's complaint as raising a claim for a violation of his rights under the Fourth Amendment.

**Discussion**

In any § l983 action, the initial inquiry must focus on whether two essential elements are present:

> (1) whether the person engaged in the conduct complained of was acting under color of state law; and (2) whether the alleged conduct deprived a person of rights, privileges or immunities guaranteed under the Constitution or laws of the United States.

*Duke v. Massey*, 87 F.3d 1226, 1231 (11th Cir. 1996) (citations omitted); *see also Hale v. Tallapoosa County,* 50 F.3d 1579, 1582 (11th Cir. 1995). In addition, to assert a viable claim for liability under 42 U.S.C. § 1983, Plaintiff must allege an affirmative causal connection between the Defendant's conduct and the constitutional deprivation. *See Swint v. City of Wadley, Alabama*, 51 F.3d 988 (11th Cir. 1995).

**Exhaustion of Administrative Remedies**

Defendant asserts that Plaintiff's action should be dismissed because he has not exhausted available administrative remedies. 42 U.S.C. §1997e(a) provides that:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

§1997e does not expressly define "prison conditions." However, "[t]itle 18 U.S.C. § 3626(g)(2), which was amended as part of the same legislation as § 1997e, provides that the term "civil action with respect to prison conditions" means any civil action arising under federal law "with respect to the conditions of confinement or the effects of actions by

government officials on the lives of persons confined in prison." *Higginbottom v. Carter*, 223 F.3d 1259, 1260 (11th Cir. 2000). In *Porter v. Nussle*, 534 U.S. 516 (2002), the Supreme Court stated that "[t]he PLRA's exhaustion requirement applies to all inmate suits *about prison life*..." *Id.* at 532 (emphasis added). The circumstances surrounding Plaintiff's apprehension and arrest do not concern "prison life" or "conditions of confinement." *See, e.g., Green v. Coats*, 2007 U.S. Dist. LEXIS 52943 at *4-6 (M.D. Fla. July 23, 2007)(prisoner claiming excessive force that allegedly occurred in the process of his arrest was not barred from bringing the claim for not exhausting administrative remedies); *Gulas v. Bernalillo County*, 2007 U.S. App. LEXIS 21538 at *9 (10th Cir. Sept. 5, 2007)(claims concerning warrantless arrest and extradition did not pertain to conditions of confinement). Accordingly, exhaustion of remedies pursuant to §1997e is not required.

**Official Capacity Claims**

Plaintiff sues Defendant in both his individual and official capacities (Dkt. 19 at 9). Defendant asserts that Plaintiff's claims against him in his official capacity should be dismissed because the claims against him in his official capacity are in effect claims against the governmental entity he represents, and Plaintiff has failed to allege that the Polk County Sheriff's Office has an official policy or custom that was the "moving force of the constitutional violation." (Dkt. 21 at 7-8).

To the extent Plaintiff sues Defendant in his official capacity, then this action is effectively an action against the governmental entity Defendant represents, which in this case is the Polk County Sheriff's Department. *See Cook ex. rel Estate of Tessier v. Sheriff of*

*Monroe County*, 402 F.3d 1092, 1115 (11th Cir. 2005).  A municipality may be liable in a §1983 action "only where the municipality *itself* causes the constitutional violation at issue." *Id.* (citations omitted) (emphasis in original). Thus, a plaintiff must establish that an official policy of custom of the municipality was the "moving force" behind the alleged constitutional deprivation.  *Monell* v. *Dep't of Soc. Servs.*, 436 U.S. 658, 693-694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). The Supreme Court has thoroughly rejected the possibility of *respondeat superior* as a basis of liability in §1983 actions. *Id.* at 690-692.  The Court finds the complaint is devoid of any facts indicating that a policy or custom of the Polk County Sheriff's Department was the "moving force" behind the alleged constitutional deprivation.  Therefore, Defendant's motion to dismiss Plaintiff's claims against him in his official capacity will be granted.

**Qualified Immunity**

In his motion, Defendant also asserts that he is entitled to immunity from suit under the doctrine of qualified immunity. Qualified immunity shields state officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  *See also Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Anderson v. Creighton,* 483 U.S. 635, 638 (1987); *Jenkins by Hall v. Talladega City Bd. of Educ.,* 115 F.3d 821, 823 (11th Cir. 1997) (en banc), *cert. denied*, 522 U.S. 966 (1997); *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc).  Unless a government agent's act is so obviously wrong in the light of pre-existing law that only a

plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit. *Malley v. Briggs*, 475 U.S. 335, 341-43 (1986).

Plaintiff asserts that Defendant violated his Eighth Amendment rights by the use of excessive and unnecessary force against him. The Eleventh Circuit has held that:

> In this Circuit, a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force "maliciously and sadistically to cause harm" is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*. *See Johnson v. Breeden,* 280 F.3d 1308 (11th Cir. 2002). There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation.

*Skrtich v. Thornton,* 280 F.3d 1295, 1301 (11th Cir. 2002) (citation omitted). Therefore, the Court finds that Defendant's motion to dismiss on grounds of qualified immunity must be denied.

**Punitive Damages**

In his motion Defendant argues that Plaintiff's claim for punitive damages should be stricken because he failed to allege that Defendant's "conduct was motivated by evil intent or malice which is necessary to give rise to a claim for punitive damages." (Dkt. 21 at 9).

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, a party may move to strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" within the pleadings. The court has broad discretion in determining whether to grant or deny a motion to strike. *Anchor Hocking Corp. v. Jacksonville Elec. Auth.*, 419 F. Supp.

992, 1000 (M.D. Fla. 1976). Motions to strike are generally disfavored by the court. *See Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991). Motions to strike are "not favored...[and] often...considered 'time wasters.'" *Somerset Pharmaceuticals, Inc. V. Kimball*, 168 F.R.D. 69 (M.D. Fla. 1996). "The motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy." *Augustus v. Bd. of Public Instruction of Escambia County, Fla.*, 306 F.2d 862, 868 (5th Cir. 1962).

The Court finds that the amended complaint provides Defendant with adequate notice that Plaintiff seeks punitive damages under the conduct on which such relief is based. Therefore, Defendant's motion to strike the claim for punitive damages will be denied.

### Conclusion

For the reasons set forth *supra*, the Court finds that Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be granted in part and denied in part, as set forth below.

ACCORDINGLY, it is **ORDERED** that:

1. Defendant's Motion to Dismiss Plaintiff's claims against Defendant in his official capacity (Dkt. 21) is **GRANTED**.

2. The remaining grounds for relief advanced by Defendant in his Motion to Dismiss (Dkt. 21) are **DENIED.**

3. Defendant's motion to strike Plaintiff's claim for punitive damages (Dkt. 21) is **DENIED.**

**DONE** and **ORDERED** in Tampa, Florida on December 7, 2007.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

SA:sfc

Copies to:
Plaintiff *pro se*
Counsel of Record