## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION


WESLEY CARUTHERS, JR.,

      Plaintiff,

-vs-                            Case No.  8:07-CV-134-T-30TBM

DEPUTY SHAWNEE McCAWLEY,

      Defendant.

_____/

### ORDER

This case arises out of the events surrounding the shooting of Plaintiff, Wesley Caruthers, Jr. (hereinafter "Plaintiff").  Plaintiff brings this action against Defendant, Deputy Shawnee McCawley (hereinafter "Defendant"), an officer who shot Plaintiff.  This matter is before the Court on Defendant's Motion for Summary Judgment and Supporting Memorandum of Law (Dkt. 51), and Plaintiff's "Motion for Summary Judgement and Supporting Memorandum of Law" (Dkt. 60) which the Court construes as a response in opposition to Defendant's motion for summary judgment.[1]  A review of the record indicates that, for the following reasons, the Defendant's motion for summary judgment should be DENIED.

---

[1]

Although Plaintiff calls his response a "motion for summary judgment," a review of the pleading reveals that Plaintiff is actually claiming that there are disputed issues of material fact, and that Defendant's request for summary judgment based on qualified immunity should be denied.  He also asks for the case to be set for trial.  Accordingly, the Court construes the pleading as a response to Defendant's summary judgment motion.

**PROCEDURAL BACKGROUND**

On January 22, 2007, Plaintiff filed a complaint and demand for a jury trial against Defendant in this Court (Dkt. 1).  On September 24, 2007, Plaintiff filed an amended complaint[2] (Dkt. 19).  Plaintiff's amended complaint alleged that Defendant, a deputy with the Polk County Sheriff's Department, used excessive force in apprehending him after he had surrendered, in violation of the Eighth and Fourteenth amendments of the United States Constitution (Id.).  Plaintiff filed a 42 U.S.C. 1983 claim against Defendant, in his individual and official capacities, seeking compensatory and punitive damages (Id. at 4-9).

On October 5, 2007, Defendant filed a motion to dismiss Plaintiff's amended complaint and motion to strike Plaintiff's claim for punitive damages (Dkt. 22).   On November 23, 2007, Plaintiff filed his response to Defendant's motion to dismiss and motion to strike (Dkt. 26).  On December 7, 2007, the Court granted Defendant's motion to dismiss solely to the extent that Plaintiff was seeking damages from Defendant in his official capacity, and denied the remainder of the motion to dismiss and motion to strike (Dkt. 27).  The Defendant filed his answers and affirmative defenses on December 17, 2007 (Dkt. 28).

Defendant filed a motion for summary judgment and supporting memorandum on August 15, 2008 (Dkt. 51).  Defendant submitted the affidavit of W. Ken Katsaris, a law enforcement consultant and former law enforcement officer, in support of their motion (Dkt.

---

[2]

Plaintiff declared under penalty of perjury that the facts alleged in his amended complaint are true and correct (Dkt. 19 at 9).

52). Plaintiff filed a response and supporting memorandum opposing the motion for summary judgment (Dkt. 60). Plaintiff also filed a "declaration," sworn under penalty of perjury, in support of his amended complaint (Dkt. 25).

**FACTUAL BACKGROUND**

The following facts are assumed true for the sake of this motion[3]:

On January 24, 2005, Deputy Monica Pastula discovered that Plaintiff was checked into room 142 of the Crossroads Motel in Lakeland, Florida (Dkt. 52 at 4). Plaintiff was wanted on federal arrest warrants for multiple bank robberies (Id.). He was also a suspect in a robbery of the Mid-Florida Schools Federal Credit Union in Bartow, Florida earlier that day (Dkt. 51-2 at 18-19). Law enforcement officers received information that during the robbery earlier that day, a note was passed to a bank teller which included a threat to kill the teller (Dkt. 52 at 4).

After Deputy Pastula learned that Plaintiff was in room 142, she contacted her supervisor (Dkt. 51-2 at 19). She and other officers from the Lakeland Police Department approached room 142, and she knocked on the door and identified herself as a law enforcement officer (Id.). Plaintiff was in the room with a female named Sandy Gibbons (hereinafter "Gibbons") (Dkt. 19 at 5). Gibbons answered the door, then slammed it shut (Id.). Nobody exited the room (Dkt. 51-2 at 19). The supervisor on the scene then contacted

---

[3] The parties' version of the events differ significantly with regard to many aspects of this incident. However, at this stage the Court is obliged to construe the facts in the light most favorable to the Plaintiff. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006).

the Emergency Response Team ("ERT") and the Crisis Negotiation Team ("CNT") (Id.).

The officers on the scene believed Gibbons was being held by Plaintiff against her will (Dkt. 51-2 at 20). Detective D. Kent ("Kent") from the CNT called the room and spoke to Gibbons (Id.). Gibbons informed Kent that there were no guns or weapons in the room (Dkt. 19 at 6). Kent asked to speak to Plaintiff, but he refused to talk to her (Id.). Kent told Gibbons that the S.W.A.T team had the motel surrounded, and they wanted Plaintiff to come out to speak with them (Id.). Gibbons told Kent that they would come out of the room only if she came to the room personally and took them out (Dkt. 60 at 2).

Deputy Chad Anderson ("Anderson") attempted to dialogue with Plaintiff for approximately an hour or hour and a half by yelling to Plaintiff through the door (Dkt. 60-2 at 74). Anderson told Plaintiff that if he wanted to surrender that he should "open the curtain, turn on and off the light and wave the white towel in the air." (Dkt. 60 at 3).

At some point during the negotiations, five members of the ERT assumed a "stack" formation outside of Plaintiff's room (Dkt. 51-2 at 20). Defendant was one of the members, and all of the members were armed (Id.). Defendant carried a shield and a .45 caliber handgun (Id.).

The ERT members had been given information that Plaintiff was a bank robbery suspect, and that there was a female hostage in Plaintiff's room (Dkt. 60-2 at 4, 22, 66). At some point during the events, Defendant received information that Plaintiff was armed (Dkt. 51-2 at 7). Anderson was also told by Sergeant Dixon from the Lakeland Police Department that it was possible that Plaintiff was armed (Dkt. 60-2 at 54). However, when Deputy

4

Martin Friar ("Friar"), another member of the ERT team, was asked whether he was told that Plaintiff was armed, he stated that "[w]e didn't know at the time."  (Id. at 48).

After approximately two hours of negotiations between Plaintiff and officers, the ERT members received information that Gibbons was going to be coming out of the room (Dkt. 60-2 at 40).  The ERT team moved closer to the room (Id.).  It was dark outside,[4] and the ERT team disabled some lights to avoid being silhouetted in the event of a confrontation (Dkt. 60-2 at 8).  At that time Plaintiff shouted through the door that "he was coming out to be arrested" and that "he didn't have any weapon." (Dkt. 60 at 3).  Plaintiff opened the door, held his hands in a "surrender position (hands even with shoulders)" and held a white towel (Id.).  He exited the room, saw no deputies in front of him, then turned to his right and saw the ERT kneeling down behind a shield (Id.).  He heard officers yelling to him to raise his hands higher and turn around and get on the ground (Id.).  He attempted to raise his hands higher, at which time he was shot in the chest by Defendant (Id. at 4).  Because he feared for his life, Plaintiff turned and ran in the opposite direction (Id.).  Defendant shot at Plaintiff three more times, and one of the bullets struck Plaintiff in his spine (Id.).  While Plaintiff was fleeing, Friar shot at Plaintiff with a shotgun loaded with "bean bags" (Id.).  After Defendant shot Plaintiff in the spine, Plaintiff fell to the ground, and Deputy Vosburg then shot Plaintiff with a taser gun (Id.).

---

[4]Defendant described the lighting as "moonlight condition."  (Dkt. 60-2 at 8).

**STANDARD OF REVIEW**

At the summary judgment stage, the court's role is to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). A granting of summary judgment is appropriate when "'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson*, 477 U.S. 242 at 249. A dispute is genuine if the evidence could lead a reasonable jury to return a verdict for the nonmoving party. *Id.* "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Federal Rule of Civil Procedure 56 permits the plaintiff or the defendant to move for summary judgment. Fed. R. Civ. P. 56. The moving party carries the initial burden of showing no genuine issue of material fact exists. This is done by producing evidence outside of the pleadings. One way the moving party may discharge its burden is by a showing that there is an absence of evidence to support the nonmoving party's case. Fed. R. Civ. Pr. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Once the moving party has made and supported its motion, the burden shifts to the nonmoving party to show that a disputed issue of material fact exists. The nonmoving party's response "'may not rely merely on allegations

6

or denials in its own pleading; rather, its response must… set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e).  A genuine issue of material fact is established when the non-movant has presented enough evidence to show that a reasonable jury could find in its favor. *Anderson*, 477 U.S. 242 at 248.

The plaintiff must produce evidence establishing the essential elements of the case that he must prove at trial. *Celotex*, 477 U.S. 317 at 322-323.  Accordingly, where the defendant has moved for summary judgment, the defendant can show that he is entitled to judgment as a matter of law because the existing record contains no evidence to support an essential element of plaintiff's case. *Id.*  All evidence and factual inferences drawn from the evidence are viewed in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

**DISCUSSION**

Section 1983 of the United States Code allows civil actions against any person who, acting 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia" deprives another of rights guaranteed by federal laws or the Constitution.  42 U.S.C. § 1983.  Under this statute, governmental employees can be held liable in their individual and official capacities for any violations of rights they commit. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 665 (1978).

A. Plaintiff's 42 U.S.C. § 1983 Excessive Force Claim

Section 1983 of the United States Code provides a civil remedy for the deprivation of any rights, privileges, or immunities, secured by the Constitution and federal laws, by a

person acting under color of statute, ordinance, regulation, custom or usage of any state, territory, or the District of Columbia.  Persons found to be in violation of this statute are liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C. § 1983.  Section 1983 does not confer a particular substantive right: rather, it provides a broad remedy for the violation of federally protected rights. *Samarco v. Neumann*, 44 F. Supp. 2d 1276, 1284 (S.D. Fla. 1999).  Thus, to establish a claim, the plaintiff must bring the § 1983 claim in conjunction with another statute or Constitutional provision which provides the right. *Id.*

Here, Plaintiff claims Defendant violated his Fourth Amendment right "to be secure in their person . . . against unreasonable seizures."[5]  U.S. Const. Amendment IV.  Protection against the use of excessive force by law enforcement falls under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 389 (1989).  To prove a Fourth Amendment violation, Plaintiff must show that a seizure occurred and that the force used in effectuating the seizure was greater than necessary. *Samarco*, 44 F. Supp. 2d 1276 at 1284-1285.

Police officers are permitted to use the amount of force that is objectively reasonable to carry out the arrest, in light of the circumstances present at that time. *Id.* Whether the force

---

[5]

The Eighth Amendment prohibits the use of excessive force against those convicted of a crime.  *See Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989).  The Fourteenth Amendment protects pretrial detainees, those charged with, but not yet convicted of, a crime from the use of excessive force.  *See Bell v. Wolfish*, 441 U.S. 520, 523 (1979).  Plaintiff's claim of excessive force during his arrest is properly brought under the Fourth Amendment.  *See Graham v. Connor*, 490 U.S. at 394 ("Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person.").  The Court must "liberally construe complaints filed by pro se plaintiffs." *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998).  Therefore, the Court will construe Plaintiff's amended complaint as raising a claim for a violation of his rights under the Fourth Amendment.

used by the police officer was reasonable is usually a question reserved for the jury. However, a court may grant summary judgment if it determines that the evidence, viewed most favorable to the plaintiff, shows that force was reasonable under the circumstances surrounding the arrest.  *Id*.  The "totality of the circumstances" examined include the severity of the crime at issue, whether the suspect posed an immediate safety threat, and whether the suspect was actively resisting or attempting to evade arrest. *Graham*, 490 U.S. 386 at 396, *citing Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985).  Because the reasonableness test is purely objective, in light of all facts and surrounding circumstances, the arresting officer's underlying intentions or motivations are ignored. *Graham*, 490 U.S. 386 at 397, citing *Scott v. United States*, 436 U.S. 128, 137-139 (1978).

B. Defendant's Motion for Summary Judgment

      In his motion for summary judgment, Defendant asserts that the undisputed facts show that he used justifiable and reasonable force under the circumstances, and that he is entitled to qualified immunity.  Defendant was working under the authority of the Polk County Sheriff's Department at the time of the incident.  Therefore, Plaintiff must overcome Defendant's right to claim qualified immunity to bring his claim to trial. Plaintiff must show that Defendant violated a clearly established constitutional right by acting in a manner that no reasonable police officer would have. Because the record, viewed in the light most favorable to Plaintiff, supports this finding, Defendant is not protected by qualified immunity.

      Under § 1983, government officials who have violated rights conferred by federal statutes or the Constitution may be sued in their individual capacities.  Because of qualified

immunity, however, public officials are ordinarily shielded from personal liability for actions undertaken during their employment. Qualified immunity enables public officials to carry out their jobs effectively without the fear of a lawsuit. The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Samarco*, 44 F. Supp. 2d 1276 at 1290-91, citing *McCoy v. Webster*, 47 F.3d 404, 407 (11th Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986). In general, qualified immunity is the rule and will only be overcome in exceptional cases. *Samarco*, 44 F. Supp. 2d 1276 at 1291, *see also Lassiter v. Alabama A & M Univ., Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994).

To establish qualified immunity, Defendant must show that he was acting within the scope of his discretionary authority when the injurious conduct occurred. *Samarco*, 44 F. Supp. 2d at 1291. Discretionary authority includes "all acts taken pursuant to the performance of the official's duties, which are within the scope of his authority, including ministerial acts." *McCoy v. Webster*, 47 F.3d at 407, *quoting Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988). Defendant is a deputy sheriff and was on duty when the incident occurred. Thus, the Court finds he was plainly acting within the scope of his discretionary authority.

With discretionary authority established, the burden shifts to Plaintiff to show that qualified immunity is not appropriate. *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). That is to say, Plaintiff must show that Defendant violated clearly established constitutional or statutory law in carrying out the alleged harmful conduct. Determining whether an official violated clearly established law turns on: (1) whether a violation of

10

currently applicable constitutional or statutory law occurred; and (2) whether the right guaranteed by the law was clearly established at the time the incident. *Samarco*, 44 F. Supp. 2d at 1291. The court examines the situation from the perspective of a reasonable officer at the scene, rather than with the 20/20 vision of hindsight. *Samarco*, 44 F. Supp. at 1291, citing *Hutton v. Strickland*, 919 F.2d 1531, 1537 (11th Cir. 1990).

1. Violation of a Constitutional Right

Plaintiff alleges that Defendant violated his Fourth Amendment right by using excessive force.  It is undisputed that Plaintiff was wanted for multiple bank robbery charges, and that during at least one of the bank robberies a note was passed to a teller threatening harm.  It is also undisputed that officers discovered Plaintiff was inside a motel room with a female thought to be held against her will by Plaintiff, and that for at least two hours officers attempted to negotiate with Plaintiff to come out of the motel room and release the female, but neither Plaintiff or the female came out of the motel room during that period of time.  From here, the evidence is contradictory.[6]  Viewed in the light most favorable to Plaintiff, the evidence establishes that Plaintiff was not armed with a weapon, and the officers did not know at the time Plaintiff was in the motel room whether he was armed with a weapon.  The female in the room informed officers that there were no weapons in the room. Prior to exiting the motel room, Plaintiff yelled out that he was unarmed and that he was

---

[6] If there is a conflict in the evidence, the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party.  *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003).

coming out "to be arrested." As he walked out of the room, he held his hands up by his shoulders, and he held a white towel in his hand pursuant to Anderson's instruction to "wave the white towel in the air." During the investigation of the incident, Deputy Robertson stated that when Plaintiff came out of the room, Plaintiff had what looked like a white towel in his hand, and he was "waving his hand[.]" (Dkt. 60-2 at 22). When Plaintiff stepped out of the room, he looked straight ahead and did not see any officers. He turned to his right and saw the officers in the stack formation, and he heard shouts from officers to raise his hands higher, turn around, and get on the ground. As he started to raise his hands higher, Defendant shot him in the chest. Viewed in this manner, as the Court must do at this stage of the proceedings, the Court finds that a reasonable jury could find that Defendant acted unreasonably in shooting Plaintiff, and therefore violated his Fourth Amendment rights.

A reasonable jury could find, under Plaintiff's version of the facts, that at the time of the shooting Defendant did not have probable cause to believe that Plaintiff posed a threat of serious physical harm to Defendant or the other officers. According to his version of the facts, Plaintiff was unarmed, announced to the officers that he was unarmed and coming out to surrender, walked out of the motel room with his hands raised in the air while holding a white towel to signify his surrender, and when ordered to do so, attempted to raise his hands higher in the air, but Defendant shot him. Additionally, although there was ample probable cause to believe that Plaintiff had recently committed a robbery involving the threatened infliction of physical harm to a bank teller, and that Plaintiff was holding Gibbons against her will, Plaintiff did not have a weapon, the officers did not know whether Plaintiff had a

12

weapon, and Plaintiff did not threaten the officers with a weapon at the time of the shooting or at any time while in the motel room.  Under Plaintiff's version of the facts, a jury could reasonably find that shooting Plaintiff was clearly disproportionate to the threat he posed at the time of the shooting.

The Court is hesitant to "second-guess the decisions made by police officers in the field," but the Court cannot conclude as a matter of law that a reasonable jury could not find that Defendant's actions were unreasonable.  *Vaughan v. Cox*, 343 F.3d 1323, 1331 (11th Cir. 2003). A reasonable jury could find that intentionally shooting Plaintiff under the circumstances established by Plaintiff's version of the facts constituted the use of excessive force. Therefore, Plaintiff has established, for summary judgment purposes, the violation of his Fourth Amendment right to be free from the excessive use of force during a police seizure.

2. Clearly Established Right

For a right to be "clearly established," "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987), *see also Hope v. Pelzer*, 536 U.S. 730, 739 (2002). In excessive force claims, the plaintiff can show the right was "clearly established" in two ways: (1)"a controlling and materially similar case declares the official's conduct unconstitutional;" or (2)"the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to

13

the official, notwithstanding the lack of case law.'" *Pace v. City of Palmetto*, 489 F. Supp. 2d 1325, 1335 (M.D. Fla., 2007), *citing Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000). For the purpose of overcoming qualified immunity, the "controlling and materially similar case" must come from the Supreme Court of the United States, the Eleventh Circuit Court of Appeals, or the highest court of the State whose law is at issue. *Pace*, 489 F. Supp. 2d at 1335, *citing Hamilton v. Cannon*, 80 F.3d 1525, 1531 (11th Cir. 1996). In the qualified immunity context, an officer will be entitled to qualified immunity if the officer reasonably could have believed that probable cause existed to use deadly force. *Vaughan*, 343 F.3d at 1332.

Taking the facts in the light most favorable to Plaintiff, an objectively reasonable officer in Defendant's position could not have believed that he was entitled to use deadly force. In his response to Defendant's motion for summary judgment, Plaintiff cites to *Tennessee v. Garner*, 471 U.S. 1 (1985), in support of his argument that Defendant is not entitled to qualified immunity (Dkt. 60 at 16-17). Under *Garner*, Defendant would have been on notice that deadly force would be justified only if Defendant had probable cause to believe that Plaintiff posed a threat of serious physical harm, either to Defendant or to others. *Garner*, 471 U.S. at 11-12 (It is not constitutionally unreasonable for an officer to use deadly force "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others," or "if the suspect threatens the officer with a weapon . . . and if, where feasible, some warning has been given."). Under Plaintiff's version of the facts, these circumstances do not exist. The Court finds that

14

Defendant had fair warning that shooting a suspect who is unarmed and surrendering and does not pose a threat of serious physical harm violates the suspects constitutional rights. *See Vinyard v. Wilson*, 311 F.3d at 1348 (pepper spraying an arrestee who is surrendering constitutes excessive force). Under Plaintiff's version of the facts, an objectively reasonable officer in Defendant's position could not have reasonably believed that he was entitled to shoot Plaintiff at the time he did so.  Accordingly, Defendant is not entitled to qualified immunity, and summary judgment will be denied.

ACCORDINGLY, the Court **ORDERS** that Defendant's Motion for Summary Judgment (Dkt. 51) is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida on October 15, 2008.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

SA:sfc

Copies to:
Plaintiff pro se
Counsel of Record